PANNELL *v.* GLIDEWELL.*

(Division B. Jan. 25, 1926. Suggestion of Error Overruled March
8, 1926.)

[107 So. 273.   No. 25277.]

1. EVIDENCE. *Statements by donor, recognizing title in occupant, should
be taken as true, and, if sufficient to show gift, claims adverse to
donee should be canceled.*

Where a person enters into possession of land under a verbal gift
and occupies the same for more than ten years under claim of
ownership, and afterwards files a bill to cancel claims of the
giver and others, statements made by the giver recognizing title
in the occupant, where such statements are testified to by the
complainant and others and are not denied by the defendant, are
to be taken as true, and where they are sufficient to show a gift,
the court should give them legal effect and award relief.

2. EVIDENCE. *Statements, in nature of conclusions and of intentions,
not disclosed by adequate language, held to have little weight
when opposed to definite statements and specific conversations in
favor of adverse parties.*

Statements, in the nature of conclusions and of intentions, not
disclosed by adequate language, have but little weight when
opposed to definite statements and specific conversations in favor
of the adverse party.

3. APPEAL AND ERROR. *On clear preponderance of evidence in favor of
plaintiff, supreme court will reverse findings of fact by chancellor
based on general and inconclusive testimony.*

Where the evidence for the complainant is strong and clear, and
only opposed by statements of general conclusions or opinions, or
reputation in the community, and the specific statements testi-
fied to in favor of complainant are clear and direct statements of
fact, and where the preponderance is strong and clear, the su-
preme court will reverse the findings of fact by a chancellor based
on such general and inconclusive testimony.

---

*Corpus Juris-Cyc., References: Appeal and Error, 4 C. J., p. 902, n.
4.  Evidence, 22 C. J., pp. 420, n. 86; 426, n. 28. Gifts, 28 C. J., p. 680,
n. 70.

APPEAL from chancery court of Chickasaw county, second district.

HON. ALLEN COX, Chancellor.

Suit by Mrs. Mattie Pannell against C. E. Glidewell, Sr., and others to cancel adverse claims to land. Judgment for defendants, and plaintiff appeals. Reversed and judgment rendered.

*Geo. T.* and *Chas. S. Mitchell,* for appellant.

This case involves a gift of land and title by adverse possession, either one of which is sufficient to pass a legal title to land or other real property.

I. *The question of adverse possession.* It is well settled that to constitute adverse possession, the possession must have been (a) actual, (b) open, visible and notorious, (c) hostile, (d) exclusive and (e) continuous for the statutory period. See 1 R. C. L., p. 698; 2 C. J. 53, Adverse Possession; Tiedman on Real Property, 695-696. It has been decided time and time again by all the courts that such acts as the evidence here reveals are sufficient to establish the fact that the possession was actual and adverse. *Ewing* v. *Burnet,* 11 Peters 41; *McCaughn* v. *Young,* 37 So. 839; *Worthley* v. *Burbanks,* 46 N. E. 779; 3 Washburn on Real Property, 1965; 2 Wood on Limitations, 267. See also *Hanna* v. *Renfro,* 32 Miss. 125; *Piggott* v. *Piggott,* 73 So. 705; *Lumber Co.* v. *Elmer,* 78 So. 705; *Huntington* v. *Allen,* 44 Miss. 668; *Davis* v. *Bowmar,* 55 Miss. 671; *Niles* v. *Davis,* 60 Miss. 753; *Davis* v. *Davis,* 68 Miss. 480; *Schuler* v. *McGee,* 90 So. 713; *Evans* v. *Harrison,* 93 So. 737; *R. R. Co.* v. *Strain,* 88 So. 274; *Jasperson* v. *Scharmikow,* 15 L. R. A. (N. S.) 1178; *Ramos Lumber Co.* v. *Sanders,* 42 So. 158; *Ill. Steel Co.* v. *Budiz,* 80 Am. St. Rep. 54.

The following instances have been held to be a sufficient open and notorious possession: "Inclosing the land with a three wire fence." *McComb* v. *Saxe,* 122 S. W. 987. "Continued occupation of land as a home,

coupled with payment of taxes." *R. R. Co.* v. *Johnson,* 121 N. W. 267. "Cultivation and continued occupancy of land as a farm." *Wolfe* v. *Anent,* 1 Grant (Pa.) 150. "Erecting a house partly on the land in controversy, and a smoke-house and crib wholly on such land, and the cultivation of a small part thereof." *Jones* v. *Weaver,* 122 S. W. 619. "Where a part of the land was cleared, a part was cultivated and a fence treated as the division line." *Dreyer* v. *Budde,* 113 N. W. 950. "It has been held that the carrying on of farm work and building operations on land is an open and visible possession." *Hartley* v. *Maycock,* 28 Ont. 508. See also *Goodson* v. *Brothers,* 20 So. 445; *Kidd* v. *Browne,* 76 So. 68 (2, 3); Tiedman on Real Property, sec. 697, p. 653; *Alexander* v. *Polk,* 39 Miss. 737; *Ford* v. *Wilson,* 39 Miss. 502, a leading case; *Davis* v. *Bowmar,* 55 Miss. 742; *Magee* v. *Magee,* 37 Miss. 138; *Alexander* v. *Polk,* 39 Miss. 736; *Gladney* v. *Barton,* 51 Miss. 216.

Was the possession hostile? The word *hostile* when used in reference to adverse possession simply means that one in possession claims the exclusive right thereto. 1 R. C. L., p. 704; 2 C. J., Adverse Possession, sec. 205, p. 122.

It is the intent of the possessor and the presumed acquiescence of the alleged true owner that determine the adverse character of a possession. *All that the law requires, therefore, is that the possession, or rather the acts of dominion by which it is sought to be proved, shall be of such a character as may be reasonably expected to inform the true owner of the fact of possession and an adverse claim of title. Ford* v. *Wilson,* 35 Miss. 504.

Actual notice is not necessary. Any fact or circumstance that is sufficient to put a prudent man upon inquiry, and is of such a character that he might ascertain the fact by the exercise of reasonable diligence, will be regarded as notice. *Electric Belt Line* v. *Ide,* 40 S. W. 64; *Hooser* v. *Hunt,* 26 N. W. 442; *Plow Co.* v. *Sherman,* 41 Pac. 623. We submit that appellee had actual

notice of the claim of appellant's ownership of the property, although all that is required under the law is, that appellee be charged with presumptive notice.

Appellant proved her title by adverse possession, not only by a preponderance of the evidence, but also beyond any doubt and further than she was required to do under the law. This court has decided many cases in favor of the claimant by adverse possession where the evidence was not nearly as clear, unequivocal and certain as the evidence in this case. *Ford* v. *Wilson,* 35 Miss. 504; *Davis* v. *Bowmar,* 55 Miss. 741.

No principle is better settled than that a parol gift of land may ripen by actual possession, into a perfect title. *Sumner* v. *Stephens,* 6 Metcalf 337; *Magee* v. *Magee,* 37 Miss. 138. *Kidd* v. *Browne,* 76 So. 68, settles the instant case. The above case contains a masterful opinion, an ingenious analysis of the doctrine of adverse possession and makes the criterion the same as was laid down by the supreme court of Mississippi in *Ford* v. *Wilson, supra,* and in *Ewing* v. *Burnet,* 11 Peters, 241.

It may be that the court below proceeded upon the idea that appellant had no color of title. It is true that she had no paper title, but this is not necessary. An entry under a claim of right is sufficient. If she entered the land under a parol gift, as she stated and in which statement she is borne out by the record, she entered under a claim of right just as good as a color of title. *Magee* v. *Magee,* 37 Miss. 138; *Davis* v. *Bowmar,* 55 Miss. 671; *Niles* v. *Davis,* 60 Miss. 750; *I. C. R. R. Co.* v. *Houghton,* 18 N. E. 301, 1 L. R. A. 215; *James* v. *R. R. Co.,* 91 Ill. 554; 1 R. C. L., Adverse Possession, sec. 20, p. 708; 2 C. J., Adverse Possession, secs. 323-168; *Probst* v. *Presbyterian Church,* 129 U. S. 182, 32 L. Ed. 642. Under the above authorities it is not necessary to have a color of title. It is sufficient that the entry be made under a claim of right. In the instant case, the claim of right was the entry under gift and is supported by acts of ownership extending for more than twenty years, showing not only

that the gift was made but also the intention with which the possession was taken and the entry of the lands made all the fundamental elements of an adverse possession.

*Stovall & Stovall,* for appellee.

I.   Where a person enters into possession of land under permission or license from the owner, the presumption is that his possession is in subordination to the true owner, in the absence of any acts amounting to a *disseisin* and does not ripen title however long it may continue.   2 C. J. 265; sec 589 and cases cited; *Davis* v. *Bowmar,* 55 Miss. 671; *Dean* v. *Tucker,* 58 Miss. 487; *Stevenson* v. *Black et al.,* 68 S. W. (Mo.), 902.

II.   Possession to give title under the statute of limitations is required to be visibly notorious, hostile and continued, to the end, that all others having a claim to the property may have notice of the claim of the occupant.   *Niles* v. *Davis,* 60 Miss. 750; *Brookes-Scanton Co.* v. *Childs,* 113 Miss. 246.

III.   A chancellor's decision on the facts of a case will be sustained by the supreme court unless it be manifestly wrong.   *Grace* v. *Pierce,* 90 So. (Miss.) 590; *Meek et al* v. *Humphreys County,* 97 So. (Miss.) 764.

Appellant's cases refer to suits between strangers. Here the occupant, complainant, Mrs. Mattie Pannell, is the daughter of the defendant, C. E. Glidewell, Sr., and her entry upon the land was permissive and the court found, on conflicting testimony, that she never informed her father that she was claiming the land as her own. *Ross* v. *Beecher,* 57 S. W. (Ky.) 475.

The case of *Stephenson* v. *Black et al.,* 68 S. W. (Mo.), 909, holds that where possession of land originates in subordination to the true title, claim of hostile ownership must be unequivocal and brought to the notice of the owner of the particular title.   About six years prior to the filing of this suit, appellant sought to obtain a

deed to the property in order to sell it. Her father dissented, and, to use her own words, said, "It was worth as much to me as it was to the other man and I had made a success of it and wanted me to stay there."

Argued orally by *Chas S. Mitchell,* for appellant, and *R. T. Stovall,* for appellee.

Ethridge, J., delivered the opinion of the court.

The appellant filed suit in the chancery court against C. E. Glidewell, Sr., Morris Glidewell, Federal Land Bank of New Orleans, La., Okolona National Farm Loan Association, Barrett Jones, and Seymour Jones, alleging that in the year 1899 her father, C. E. Glidewell, Sr., gave her certain lands described in the bill; that it was the custom and practice of C. E. Glidewell, Sr., when any of his children married, to give them either one thousand six hundred dollars or one hundred sixty acres of land; that she elected to take land, and that he agreed to give her the land and placed her in possession thereof, but did not execute and deliver to her a deed thereto—any written deed—although he promised to do so; that she had lived upon the said land for more than twenty-two years, being in actual, exclusive, and undisturbed possession thereof, had paid taxes thereon and improved said premises; that her possession of said land had been actual, open, notorious, continuous, and adverse as against all the world for a period of more than ten years; that within the past five or six months she had learned that Morris Glidewell, a nephew of complainant and grandson of the defendant, C. E. Glidewell, Sr., had made application to the Federal Land Bank of New Orleans, La., through the Okolona National Farm Loan Association, for a loan upon certain property, including the portion of land described in her bill, owned and possessed by the complainant; that immediately after she learned these facts she took steps to protect her

property.   The prayer of the bill was for a cancellation
of all claims of the defendant to the said lands.

C. E. Glidewell, answering the bill, claimed that he was
the owner and possessor of said property described in
complainant's bill; that complainant, some time in the
year 1899, went into possession of said lands by per-
mission of the defendant, but denies that he gave his
daughter said lands, and alleges the fact to be that the
complainant and her husband were in possession of the
property with the understanding and agreement that
they would pay the taxes thereon and use it to their best
advantage and receive the benefits accruing therefrom;
that complainant held at all times at the sufferance of
the defendant, with no power to alienate or incumber the
said lands, and that he was at all times until the pres-
ent date recognized by the complainant as being the owner
of said lands.   He admits that she went into the actual
possession of said lands, but denies that, as between him-
self and complainant or her husband, there was ever any
act of ownership over the property exercised in contra-
vention of the defendant's rights as owner in fee.   He
admits that the complainant paid taxes on said lands,
and made certain improvements on said premises which
were to their own advantage and benefit, but were held
at the sufferance and permission of the defendant.   He
denies the allegation that complainant's possession was
actual, open, notorious, continuous, and adverse for more
than ten years, but alleges the fact to be that complain-
ant went into possession of the lands with the under-
standing and agreement that she was to be treated as
defendant had treated his other children—that is, she
was to occupy the land at the will of the defendant—it
was to be used for such length of time as the defendant
saw fit; that it was understood by complainant, by his
other children, and by members of his family, and was
generally known in the community, that the defendant
permitted his children, when they married, to occupy a
parcel of land to be used by them in earning a livelihood,

and that defendant at no time parted with his legal title nor his right to alienate or incumber the said lands.

The complainant testified sustaining the allegations set up in her bill. Among other things, she makes the following statement:

"Well, my father gave me the choice between one thousand, six hundred dollars or a place. He also gave me a horse, a mare by the name of Maude, a cow, and a set of furniture. And I had had this land something like near ten years and John—when we built on it. We lived there and had control of it all this time, and when we built we built this home about ten years after that—after we had been married. But my father taken dinner with me one Sunday afternoon, and he came over to the old frame building, and John suggested to build a house on his part. And pa says to me, says, 'Mattie, build on here; this is the best location.' And so John said, 'Well, it might be some trouble about it hereafter.' And pa turned to me and says to me, 'Mattie, how long have you had this property? And I said, 'Ten years.' And he told me, he says, 'Ten years' possession will hold it above anybody's claim; go ahead and build on it.' And he says, furthermore, 'I haven't made any of my children a deed, but when they get their deeds I'll see that you get yours.' And I took my daddy at his word."

She testified further that they had been in possession and had full control of it and had improved it, had built up the land from a condition where it made poor cotton to where it made about a bale to the acre, and had built a house on it, which cost, at the time of building, some three thousand, five hundred dollars or four thousand dollars; that at the time of building lumber was cheap, and that they ordered a carload to get it cheap. Her husband testified to the same effect, corroborating his wife's testimony in all respects. He testified that the buildings—house and barn—cost him about five thousand dollars, and that the land had been built up and improved. He further testified that when he went to build a house he owned land near by in his own right, and that

his wife's father made the suggestion that he build the house where it was built, on the land given his daughter, that that was the best place, and that the title was better than anybody else's, and that they had occupied it all the time as owner.

Another witness testified that on an occasion he, being in the insurance business, went to write a policy on the house occupied by the appellant, and in conversation about the title that Mr. Pannell stated that they owned it, but that they did not have a deed to it; that thereupon he went to see Mr. Glidewell, defendant and father of the complainant, and had a conversation with him about the ownership of the property and that Mr. Glidewell stated that it was Pannell's home, that he had been on it twenty-one or twenty-two years and paid taxes on it, and said, "I have no claim on it whatever."

Another witness testified to a similar statement made to him by Mr. Glidewell in regard to assessing the property.

Mr. C. E. Glidewell, the defendant, testified in his own behalf; stated that he was eighty-five years of age; that he held title to said land; that his daughter was to have possession of it during her lifetime; that he had in his will that those of his children who had no children would have only a life estate in the lands; that he intended, in default of children, for the property to go back to his side of the house; that three of his children wanted to procure a loan on the land given to them, and he gave them a deed to it; that one of the deeds was made something over two years before the date of the trial; that the defendant owns about two thousand acres of land—maybe a little more than two thousand acres—that it was his custom, when his children married, to give them a piece of land each or one thousand, six hundred dollars in cash; that the lands were valued at about that sum at the time they were given; that if they took the money he did not expect the money back; that it was the understanding that they were to keep the taxes paid and to have possession of the land; that they were to have

whatever was made on the land; and that they were to pay no rent. He was asked the question, "Mr. Glidewell, did Mr. Pannell or Mrs. Pannell ever tell you that this land was their own, that they were holding it as their own?" To which he answered, "Not as I recollect; not as I recollect of; they might have done it, but I don't recollect it now." He did not deny making the statement testified to by Mrs. Pannell and her husband on the occasion when they were fixing to build or were building the house thereon.

There were a number of witnesses who testified about Mr. Glidewell's practice of giving his children their choice between one thousand, six hundred dollars and one hundred sixty acres of land, and there was some testimony, based upon statements made by Mr. Glidewell, that it was the community understanding that the children had a mere possessory interest in the lands they lived on, and that the title was in Mr. Glidewell. None of them testified to any statements made on the part of Mrs. Pannell that her possession was of this character, nor does any one deny that Mr. Glidewell made the statements to her specifically as stated by her.

The chancellor held that, while the case was an exceedingly close one, in his opinion the complainant had not made out a case to sustain her claim. There was one statement made, about seven or eight years before the suit, when Mrs. Pannell was thinking of selling the place, by her father to the effect that the place was worth as much to her as to any one else, that she had made a success of it, and that if he were in her place he would not sell. The chancellor stated that if this statement had been made more than ten years before the beginning of the suit that he thought it would be conclusive of this lawsuit, because it absolutely put Mr. Glidewell on notice that they were claiming title to the land and had the right to dispose of it, but that, as it was made less than ten years, he did not think the title had ripened into adverse possession. He also stated, in reference to the conversations had at the time the house was being built and at

the time of the taking out of the insurance, that those were rather serious questions, but that he did not suppose that under the conditions as existed in this case, where the questions were questions between a father and a daughter and where the possibility and the great probability in the lawsuit is that he had in mind at that time the claims of outside parties other than his own claims, and that such statements were not sufficient to put him on notice that the claim was hostile and adverse.

We think the chancellor failed to give the proper effect to the evidential force of these statements. The statement made at the time of the building of the house was a clear recognition of the title of the daughter at that time, and induced them to erect their home and make other improvements thereon. He could not have been referring to outside claims, because he was the only person that was in position to assert any claim thereto. The legal title was in him so far as paper title showed, and no other person had any title except the daughter, the appellant here. She had had possession ten years under a verbal gift then and there recognized by her father, which was sufficient to make a legal title although not a paper or record title. As stated, this statement of the daughter is not denied, and, if given force, as we think it should be given, evidences her title to the land. The statement made to the insurance agent was also an admission of title. It is true this statement was explained by Mr. Glidewell in his testimony as being made by him with the understanding that it only affected the house, but the language used, as testified to by him, on its face imported a recognition of title in the daughter. Another persuasive fact is that he gave the option of the land or one thousand, six hundred dollars, the child to exercise the option as to which it would take. He admits that if a child took the money it was never to be returned; that he did not expect ever to receive it again. His own testimony shows that he valued the land at that time as being equal in value to the money.

We think that all circumstances taken together over-whelmingly establish the plaintiffs contention. Mr. Glidewell's undisclosed intentions and purposes can have but little weight. Transactions of this kind are to be determined, if possible, by the language used between the parties. Mr. Glidewell did not see proper to differ with these witnesses about what was actually said. He does state his conclusions that he was the owner, and some of the other witnesses state similar conclusions, but they do not state the facts differently from what Mr. and Mrs. Pannell state them, and do not dispute that Mr. Glidewell used the actual language used by the complainant and her husband and the other witnesses testifying for them. Consequently the court should give effect to the language used and character of possession and claim under which the possession was held. Giving all these statements their value, and looking to the force of the facts as disclosed rather than the conclusions of the witnesses, we think it is manifest that complainant's title is sustained by the proof.

The judgment of the lower court will therefore be reversed and judgment entered here canceling the claim of the defendant.

*Reversed, and judgment here.*